SAMUEL, Judge.
This is a suit against Stolt-Neilson, Inc., d/b/a Gulf Motorships, Inc. and Edward R. Ransom, and their respective insurers, Insurance Company of North America (INA) and St. Paul Fire & Marine Insurance Company, to recover losses resulting from a fire. Plaintiffs are Security Insurance Company of Hartford and its insureds, Raymond Peacock and Frank Cimo, d/b/a National Apartments, the owners and lessors of the fire-damaged premises. Plaintiffs later amended their petition to add General Electric Company and its Hotpoint Division as defendants.
The defendants answered, denying liability. Stolt-Neilson and INA also filed a third party demand against Ransom seeking indemnification in the event of an adverse judgment on the theory that Ransom’s negligence was the cause of the damage to the apartment.[1]
Shortly prior to trial, St. Paul was discharged as a defendant when it paid its full policy limit on Ransom, its insured, to the plaintiffs in settlement of its liability. Immediately prior to trial, Stolt-Neilson and INA filed peremptory exceptions of no cause or right of action based on the release in favor of St. Paul and these exceptions were taken under advisement by the court.
After a trial on the merits, judgment was rendered in favor of all defendants, dismissing plaintiffs’ suit. From that judgment only one plaintiff, Security Insurance Company of Hartford has appealed seeking a reversal of the judgment insofar as Stolt-Neilson, Inc., and its insurer, Insurance Company of North America, are concerned.[2]
The litigation arises out of a fire which occurred on April 23, 1975 in the kitchen of Apartment 3 at 520 St. Philip Street in New Orleans. The occupants of the apartment were defendant, Edward R. Ransom and a roommate, John Lapeyre. At the time of the fire, Ransom was employed by Stolt-Neilson as a ship operator. He was that litigant’s general representative for all commercial-type activities in the Gulf-South area, he was on call 24 hours a day, and had moved to New Orleans to take the position. Stolt-Neilson maintained a district business office for him, at which he conducted his employer’s business during the day and also executed the lease on his apartment, paid his rent, and paid the expense of a telephone. However, all of Ransom’s other expenses, including utilities and food, were paid by Ransom and his roommate.
*689 Ransom testified: At approximately 2:30 p. m. on the day of the fire he received a telephone call at his office instructing him to pick up certain papers from a Stolt-Neil-son vessel which was sailing at midnight. After concluding work at his office, he returned to the apartment at approximately 4 p. m. He had obligated himself to bring a house guest to New Orleans International Airport to catch a 5:30 plane, and before leaving for the airport he began to prepare his evening meal. After placing meat and vegetables in a pot of water on the stove and turning the burner control to the low position, allowing the food to simmer, he left the apartment and drove his friend to the airport, arriving there approximately 40 minutes later. He then drove to Goodhope, Louisiana where he picked up the papers from his company’s vessel. When he returned to his apartment at approximately 7:30 p. m., he found it had caught fire and burned.
Appellant argues the fire was caused by Ransom’s negligence, and that Stolt-Neilson and its insurer, INA, are liable because Ransom was acting in the course and scope of his employment when he caused the fire. Stolt-Neilson’s policy with INA includes “any employee of the Named Insured [Stolt-Neilson] while acting within the scope of his duties as such”.
The testimony conflicts, and there is an issue of fact as to whether Ransom or La-peyre actually left the pot unattended on the stove. Captain Burnett, a senior investigating officer with the New Orleans Fire Department, testified a young man, not Ransom, told him he also lived in the apartment and had left the pot on the stove. The description given of this young man by Burnett fits the description of Lapeyre, Ransom’s roommate. And Raymond Peacock, one of the owners of the apartment, testified Lapeyre admitted he was cooking and had left the pot on the stove. Similar testimony was offered by Mr. Catha, manager of the building. Ransom, however, testified it was he who had begun cooking and had left the pot on the stove when he left to go to the airport and to Goodhope.
The second issue for the trial court’s consideration was whether, assuming Ransom actually started the fire, he did so in the course and scope of his employment with Stolt-Neilson, thereby making his employer and its liability insurer responsible for the fire damage. The issue of whether an employee was acting within the course and scope of his employment is one of fact, and is governed primarily by Article 2320 of the Louisiana Civil Code which states:
“Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.” LSA-C.C. Art. 2320.
The established jurisprudential rule is that an employer can only be vicariously liable for an act of an employee when that act occurs in the course and scope of the latter’s employment.[3] In the present case, it is clear Ransom did not act in the course and scope of his employment while cooking his evening meal. Appellant places much stress on the fact that Ransom’s employer was the actual lessee of the apartment. However, this fact alone cannot lead to the conclusion that anything done by Ransom while in the apartment is within the course and scope of his employment. On the contrary, the facts show Ransom came home from the office after having been ordered to obtain some papers from a vessel about to sail that night. He returned to his apartment in order to cook his evening meal, a personal task, prior to returning to the duties of his employment by obtaining the papers. In the meantime, he also undertook another personal task of driving a friend to the airport.
*690 If Ransom had injured or damaged someone while at work or while driving to his assigned task of picking up papers from the departing ship, there could be substance to plaintiffs’ argument. However, the jurisprudence is uniform in holding that a tort of an employee must be incidental to the performance of his employment functions.[4]
Accordingly, we conclude Ransom was not in the course and scope of his employment when he caused the fire in suit, if in fact he did cause that fire. This makes it unnecessary to decide or consider the third issue presented, whether a settlement under a policy issued by St. Paul, which specifically excluded business activities from coverage, estopped appellant from claiming Ransom was in the course and scope of his employment when he caused the damage to the apartment.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Defendant, Ransom, also filed a third party demand against the North River Insurance Company, a liability insurer of Stolt-Neilson, Inc., on the theory that he was acting within the course and scope of his employment with Stolt-Neilson at the time he caused the fire sued upon, and North River was therefore his insurer with respect to any liability arising out of the incident. However, Ransom voluntarily dismissed this third party demand.

. Appellant also seeks judgment against Ransom individually for that part of the fire damage which exceeds the full limit of the policy issued by St. Paul to Ransom and paid by St. Paul. We summarily dispose of that appellant claim by stating it was dismissed by stipulation in the trial court at the time of trial.

. See, for example, Terito v. McAndrew, La.App., 246 So.2d 235.

. LeBrane v. Lewis, La., 292 So.2d 216; Johns v. Hunt Lumber Company, La.App., 250 So.2d 543; Laird v. Travelers Indemnity Company, La.App., 236 So.2d 561; Wilis v. Correge, La.App., 148 So.2d 822.