441 So.2d 5 (1983)
Johnny H. JOHNSON, Plaintiff-Appellant,
v.
Matthew B. LARSON, et al., Defendants-Appellees.
No. 83-190.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Writ Denied January 16, 1984.
*6 Louis J. Cosenza, Leesville, for plaintiff-appellant.
Hall, Lestage & Landreneau, David R. Lestage, DeRidder, Cassandra Simms, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
This is an appeal from a trial court's ruling in a non-jury trial which granted the defendants' motion for judgment of dismissal following the close of the plaintiff's evidentiary presentation.[1]
The plaintiff, Johnny Johnson, was injured as he was standing between two parked vehicles, and one of them was rear-ended by a car driven by Matthew Larson. Included as defendants were Larson and his insurers, Dairyland Insurance Company (Dairyland) and Nationwide Insurance Company (Nationwide); L.R. Hinson, Jr. and R.E. Berry, Vernon Parish Sheriff's Deputies; Frank Howard, Sheriff of Vernon Parish; their insurers, North River Insurance Company (North River) and International Surplus Lines Insurance Company (International); Vernon Parish and the State of Louisiana. Howard, Vernon Parish and the State were joined on the theory of vicarious liability, resulting from their employer/employee relationship with Hinson and Berry. The State filed a third party action against Hinson, Berry, Howard, North River and International in the event that judgment was entered against the State.
Prior to trial, Johnson reached a settlement with Larson, Dairyland and Nationwide, reserving his rights against the remaining defendants.[2]
Plaintiff contended at trial that a legal cause of his injuries was the negligence of Deputies Hinson and Berry in failing to take precautionary steps which could have prevented the accident. At the close of plaintiff's evidence, the trial court granted the defendants' motion for dismissal finding that the officers were not negligent in their actions as they owed no duty to secure the scene under the circumstances presented.
From the judgment of the trial court dismissing the suit, plaintiff appeals. We affirm.
Prior to considering the facts and the issue, we take note of the appropriate standard to be used in deciding cases wherein a motion for dismissal is filed in a non-jury trial. LSA-C.C.P. art. 1810(B) provides as follows:
"B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence."
And, in Bradley v. Hunter, 413 So.2d 674, 676 (La.App. 3rd Cir.1982), writ den., 415 So.2d 952 (La.1982), this court stated:

"When a motion for a dismissal is filed under this provision, the proper standard to be applied by the trial court, in ruling upon the motion, differs from the standard to be used when a motion for a directed verdict is filed in a jury trial. In a non-jury trial, the trial judge, upon a motion under art. 1810(B) for a judgment of dismissal (upon completion of the *7 plaintiff's case), must weigh and evaluate all of the evidence presented up to that point in the trial and must grant dismissal if the plaintiff has not established proof by a preponderance of the evidence. Semien v. PPG Industries, Inc., 413 So.2d 956 (La.App. 3rd Cir.1982); Murray v. Haspel-Kansas Investments, 395 So.2d 453 (La.App. 4th Cir.1981)."

Under these principles, we examine the facts to determine whether the trial court was correct in holding that the plaintiff had failed to prove by a preponderance of the evidence that the deputies were negligent.

FACTS
On June 27, 1978, shortly before midnight, the plaintiff, Johnny Johnson, was driving his automobile west on Louisiana 10, a two-lane, hard surface highway in Vernon Parish, when he overtook a car being driven very slowly. The other car was driven by Ms. Tannie Rhodes with whom Johnson was well acquainted. Recognizing Johnson, Ms. Rhodes waved to him for assistance and pulled her car onto the shoulder of the road, completely off the travel portion of the highway. After parking her car, Ms. Rhodes left her headlights burning and also turned on her emergency blinking lights, all of which remained burning until the time of the collision. Johnson passed Ms. Rhodes and turned his car around. He then parked his car on the shoulder facing the Rhodes vehicle. Johnson also left his headlights on so that he could see under the hood of Ms. Rhodes' car.
The travel portion of Louisiana 10 at that point was clearly distinguished from the hard surfaced shoulder by a white painted line. The evidence establishes that the two cars were completely on the shoulder and clear of the travel lanes of Highway 10. Trooper Merlin Schales, who investigated the accident scene, testified that the hard surfaced shoulder was seven to eight feet wide, enough to allow a car to pull completely from the travel lanes. The plaintiff stated that Ms. Rhodes' right car wheels were on the dirt about one foot north of the hard surfaced shoulder.
According to Johnson, Ms. Rhodes told him that she was having transmission problems and that earlier that day she had had a vacuum hose installed, which had temporarily solved the problem. Shortly after Johnson and Ms. Rhodes had begun looking for the vacuum hose, Deputies Hinson and Berry arrived at the scene and asked if they "were having trouble." Ms. Rhodes answered affirmatively, but apparently nothing further was said. The deputies remained at the scene for a few minutes and, after receiving no request for assistance, they left.
Soon after the deputies had departed, a car heading west on Louisiana 10 and driven by Matthew Larson, a soldier stationed at Fort Polk, swerved onto the north shoulder of the road colliding with the rear of Rhodes' vehicle.[3] At that moment Johnson was standing between his and Rhodes' cars. The impact of the Larson car forced the parked vehicles together, injuring Johnson's legs. This suit and appeal followed.
The issue presented on appeal is whether the trial judge correctly ruled that the deputies were not negligent in their failure to secure the scene under the circumstances presented.

THE DUTY OF THE DEPUTIES
To resolve the issue of whether the deputies had a legal duty to remain at the scene and secure the area to protect same, we examine the jurisprudence to determine under what circumstances a traffic officer has the duty to secure a hazardous traffic condition to reduce the risk of accident and injury.
*8 In Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387, 1389 (La.App. 1st Cir. 1981), writs den., 410 So.2d 1130, 1135 (La. 1982), a deputy came upon a scene of an accident. One of the vehicles involved in the accident partially obstructed the highway. He called the dispatcher and reported the accident but did not take steps to secure the scene and to protect against further accident. Shortly after the accident, an intoxicated driver failed to see the partial obstruction of the highway by the vehicle and struck it causing injuries to the plaintiff. The court held as follows:
"As to the second point, the evidence is clear that a deputy is charged with the responsibility of protecting an accident scene. There is ample evidence that Mr. Daigle had two to three minutes in which to perform that duty, which was more than enough time....."
In Duvernay v. St., Through Dept. of Pub. Safety, 433 So.2d 254, 258 (La.App. 1st Cir.1983), a traffic light at the intersection of two highways was malfunctioning. This condition was reported to the deputy who was dispatcher for the Ascension Parish sheriff. The deputy reported the condition to the State Police. No steps were taken by the deputy to have the intersection secured. An accident occurred at the scene of the malfunctioning light causing injuries. The court found the deputy negligent, stating as follows:
"As did the trial court, we find that once Deputy Melancon became aware of the dangerous traffic situation that existed, he then had the duty to take affirmative action to see that motorists, such as Duvernay, were not subjected to unreasonable risks of harm. He did not fulfill his duty merely by sending the teletype message to the State Police. He was required to do more. He should have ascertained if the message was received. He should have either dispatched a patrolman to the scene immediately or made sure the State Police sent a trooper to secure the intersection. He should have made his replacement fully aware of the circumstances. We agree with the trial judge that the intersection could and should have been secured by the Sheriff's Department prior to the accident. Deputy Melancon breached the duty placed upon him....."
LeJeune v. Allstate Ins. Co., 365 So.2d 471, 477 (La.1978), presents another example of an officer's duty of securing a hazardous traffic condition to protect against possible accidents. In this case, a deputy was escorting a funeral procession. Upon arriving at an intersection that was controlled by a blinking light, the deputy led the cortege through a blinking red light without protecting the cortege from traffic proceeding along the street controlled by the blinking amber light. A vehicle proceeding along the favored street at a high rate of speed struck the hearse causing the death of a passenger. In a damage suit by the survivors, the court held as follows:
"The duty breached by Deputy Smith was to secure the intersection in order to give drivers on the favored highway, such as Molitor, warning that the funeral cortege was passing through the intersection, and thus to make it safe for vehicles such as the hearse to ignore the flashing red light. The duty was designed to prevent an intersectional collision involving the funeral procession, with the consequent risk of injuries such as those that killed LeJeune."
The plaintiff relies heavily upon the Le-Jeune case to establish the negligence of the deputies in the case at hand. In his reasons for judgment, the trial judge stated that LeJeune is clearly distinguishable from this case on its facts. We agree with this conclusion.
In each of the three cases we have discussed, Curry, Duvernay and LeJeune, we find common factors existing which attached liability to the officers involved. In each case, an obvious, dangerous traffic condition existed, which condition was known to the respective officers, and the officers had ample time and opportunity to protect the dangerous condition but failed to do so. These factors being present in *9 each of these cases, the officers were found to be negligent.
This brings us to the crucial question in the case sub judice; i.e., were these factors present in this case? As we examine the essential facts we conclude that the factors which created liability of the officers in Curry, Duvernay and LeJeune are not present in this case.
In brief, plaintiff acknowledges that he was unable to find any jurisprudence creating a duty under the peculiar circumstances of the present case; we, also, cannot find any such supporting case law.
On the night of the accident in question, the weather was clear and dry. The highway, at that area, was straight and slightly rolling; there were no obstructions to vision on the highway. When the deputies approached the two parked vehicles, each was parked on the shoulder of the road, completely clear of the travel lanes. Both cars' lights were burning and Rhodes had turned on her emergency lights. The trial judge found the two cars to be visible from a distance of one quarter to one-half mile. The record supports this finding. Ms. Rhodes admitted that her car was still operable at that time, although it would only travel slowly. Assisting Ms. Rhodes in her repairs was the plaintiff and neither he nor Ms. Rhodes requested the officers' assistance in any manner.
The two well-lighted vehicles parked upon the shoulder, completely clear of the travel lanes of the highway, created no obvious, dangerous condition for anyone using the highway in a reasonable manner. The deputies could not be expected to anticipate that a driver of a vehicle, under the circumstances presented, would leave the main travel portion of the highway and strike a vehicle parked on the shoulder of the highway. To hold otherwise would place an unreasonable burden upon our law enforcement officers and agencies.
We conclude that the deputies, under the facts presented, did not have a legal duty to protect the parked vehicles against the unforeseeable traffic development that occurred in this case.
Plaintiff argues that the right headlight of the plaintiff's car was shining in the direction of Larson and that this may have confused Larson causing him to leave the main travel portion of the highway. An expert testified that this could be an explanation of the cause of the accident. This position is speculative as the record does not reflect the reason why Larson left the highway striking the Rhodes vehicle. Again, we point out, Larson's testimony was not presented at trial. This argument lacks merit.
The trial court correctly granted the defendant's motion to dismiss.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be paid by plaintiff-appellant, Johnny H. Johnson.
AFFIRMED.
NOTES
[1] The motion was referred to as a motion for a directed verdict, which is only available in jury trials. This is a non-jury trial and the motion will be treated as a motion for a dismissal under LSA-C.C.P. art. 1810(B).
[2] The amount of settlement was $30,000.00.
[3] Larson did not testify at the trial. It is not clear what caused him to leave the travel portion of the highway and strike the Rhodes car situated on the shoulder. The investigating officer stated that Larson told him at the accident scene that he went upon the shoulder to avoid a car that was approaching him traveling in Larson's lane. The officer stated that Ms. Rhodes confirmed this. Ms. Rhodes, at trial, denied telling the officer that an approaching car was involved. Johnson stated that he was unaware of the presence of the fourth car.