443 So.2d 1151 (1983)
Donna Renee POYNOR, et al
v.
Martin J. CURE, Jr., et al.
Sharon Marie KENNEDY, et al.
v.
Martin J. CURE, Jr., et al.
Kermit Evans KING
v.
Martin J. CURE, Jr., et al.
Nos. 82-CA-44 to 82-CA-46.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1983.
Rehearing Denied January 17, 1984.
Writ Denied March 16, 1984.
*1153 Kopfler & Robinson, Maurice D. Robinson, Jr., Hammond, Law Offices of Daniel E. Becnel, Jr., Daniel E. Becnel, Jr., Barry J. Landry, Mary Hotard Becnel, Reserve, John C. Bono, Metairie, for plaintiffs-appellants.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, Donovan & Lawler, Robert C. Stern, Noel E. Vargas, II, Metairie, Authement, Weeks & Larke, Grady C. Weeks, Houma, for defendants-appellees.
Before BOUTALL, CHEHARDY, CURRAULT, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This suit for damages arises from a tragic automobile accident which left two people dead, one person blinded, and others with various injuries.
On the morning of January 25, 1980, the deceased, Bernice D. Poynor, was driving his usual route to work along Airline Highway (U.S. Highway 61) in St. Charles Parish. Sharon Marie Kennedy and her late *1154 father, Jessie Kennedy, were passengers in the Poynor vehicle. Heading in the opposite direction toward Baton Rouge, Martin J. Cure, Jr. was driving his dump truck to pick up a load of sand for Barriere Construction Company. Mr. Cure claims he suddenly saw a brake light ahead, which caused him to hit his brakes. His truck then skidded across the undivided highway into the oncoming traffic. The Poynor vehicle slammed into the dump truck causing the death of Bernice D. Poynor and Jessie C. Kennedy and the serious injuries of Sharon Marie Kennedy. Almost simultaneously a 1977 Oldsmobile operated by Antoine J. Madere, Jr. and an MG driven by Kermit Evans King, both proceeding in the same direction as the Poynor vehicle, crashed into the first accident.
Three suits were filed which were consolidated before trial. For purposes of this appeal, the relevant parties are as follows: The family of Bernice D. Poynor brought survival and wrongful death actions. The family of Jessie Kennedy brought a wrongful death action, and, in addition, Sharon Marie Kennedy brought suit on her own behalf for her injuries. Kermit Evans King brought suit for his personal injuries. Named as defendants were Martin J. Cure, Jr., his liability insurer, Aetna Insurance Company, Bernice D. Poynor's and Jessie and Sharon Marie Kennedy's under insured motorist carrier, Sentry Insurance Company, Barriere Construction Company as alleged employer of Cure, United States Fidelity & Guaranty Company (U.S.F. & G.) as insurer of Barriere, Antoine J. Madere, Jr., his insurer, Traveler's Insurance Company, and the State of Louisiana through its Department of Transportation and Development.
The case came to trial on June 1 and continued through June 9, 1981. Antoine J. Madere and his insurer were dismissed as defendants at the beginning of trial. A bench trial was held as to the liability of the defendant, the State of Louisiana through its Department of Transportation and Development, and on June 5, 1981, the State was dismissed on a motion for a directed verdict. During the course of the trial, the trial judge determined Cure was an insured under Barriere's primary liability insurance policy with U.S.F. & G. At the conclusion of the trial, the jury found Martin J. Cure, Jr. negligent and his negligence the proximate cause of the accident[1], Mr. Cure was an independent contractor and not an employee of Barriere, and in favor of all plaintiffs.[2] The issues on appeal are:
(1) Whether the jury verdict on the issue of employment status was based upon an inadequate jury charge;
(2) Whether Martin J. Cure was an employee of Barriere Construction Company, and whether Cure's alleged negligent conduct was within the course and scope of his employment therefore making Barriere Construction Company vicariously liable for this conduct;
(3) Whether the trial court properly dismissed the State of Louisiana through its Department of Transportation and Development on a directed verdict;
(4) Whether the trial court erred in failing to grant a new trial due to plaintiffs' dismissal of their suit against defendant Antoine Madere subsequent to the beginning of trial;
(5) Whether the trial court erred in utilizing gross income figures as opposed to net income figures in calculating economic losses;
(6) Whether the trial court abused its discretion in its award for loss of earnings to Sharon Marie Kennedy.[3]

*1155 ISSUE ONE: JURY INSTRUCTIONS ON EMPLOYMENT STATUS
Plaintiffs and defendants, Martin J. Cure and Aetna Insurance Company, contend the trial court erred in denying a requested jury charge on the issue of Martin J. Cure's employment status. They allege the charge given was inadequate and confusing as evidenced by the jury initially finding Cure was both an employee of Barriere and an independent contractor. After the trial judge instructed the jury that this finding was inconsistent, the jury returned a verdict finding that Cure was an independent contractor.
The trial judge gave the following instructions on the employment status issue:
"This court will charge you that to determine whether the relationship that exists is that of employer/employee or independent contractor. (sic) You may consider a number of factors that have been brought out in evidence. However, this court will, without limitation, will tell you that you can consider the following factors: One, did Barriere exercise the control over the performance of work by Cure, or did it merely suggest that the manner of performance with Cure free to operate as he wished. If Barriere exercised control, employer/employee. If Barriere merely suggested and Cure operated as he wished, independent contractor. Further factors, was there a contract between Barriere and Cure for a specific job at a stated price, or did Barriere hire Cure for jobs necessary to it's (sic) usual course of business as these jobs developed. If there was a contract between Barriere and Cure, specific job and price, independent contractor. If Barriere hired Cure for jobs necessary to it's (sic) usual course of business and as these jobs developed, employer/employee. Another factor that you may consider was Cure carried on the company payroll. If so, that evidence to be weighed as to employer/employee. Did Barriere deduct Social Security income withholding taxes, unemployment matters, or any other compensation from his pay. If they did not, that is evidence to suggest independent contractor. Another factor, Cure had his own insurance on his own vehicle. That would suggest and have some weight as independent contractor. Another factor, did Barriere have the authority to fire Cure, that fact would have weight as to the employer/employee relationship. Another factor, did Barriere have authority to determine the work hours of Cure. That would have evidence of, that would be a way to determine employer/employee relationship. Those are not exclusive. You have heard the evidence and you may apply any and all of the factors that you heard relative to this issue in determining whether or not the employer/employee or the independent contractor status existed." (Emphasis added.)
Louisiana Civil Code art. 2320 holds an employer responsible for the torts of his employees committed during the course and scope of employment. In order for art. 2320 to apply, a plaintiff must show the existence of an employer/employee relationship. Our jurisprudence recognizes the single most important factor in determining an employment relationship is the right of the employer to control the work of the employee. Roberts v. State, Through the Louisiana Health & Human Resources Administration, 404 So.2d 1221, 1225 (La. 1981); Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 391 (1972). Hickman explains the application of the test of control in the following manner:
"In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists..." *1156 Hickman 262 So.2d 385, 391 (Emphasis added).
Plaintiffs, as well as defendants, Martin Cure and Aetna Casualty Company claim this instruction on employment status is inadequate because it emphasizes the "exercise" of control by the employer over the individual rather than the "right" of control. They urge this aspect of the employment charge, as well as the manner in which the charge was presented, confused the jury as was reflected in the jury's initial return of an inconsistent verdictfinding defendant Cure as both an employee of Barriere Construction Company and an independent contractor. Furthermore, they argue the trial court erred in not initially discussing more thoroughly the distinction and incompatability between employee and independent contractor status and the trial court further erred in not reinstructing the jury on the employment status issue after the inconsistent verdict was returned.
It is important that a proper charge of all facets of the law involved be given in order that a jury may fairly adjudicate the rights, liabilities, and obligations of the parties concerned. Gonzales v. Xerox Corp., 320 So.2d 163, 164-165 (La. 1975). The trial court's charge on employment status is incomplete and, in one important respect, incorrect. It does not explain the importance of a "right" of control but rather tends to place emphasis on the actual "exercise" of control contrary to the correct statement of the law as set forth in Roberts and Hickman. Because the jury verdict finding Cure was an independent contractor was not based upon or guided by an essential and correct legal principle and because the record is otherwise complete, we are required to render an independent judgment on this issue. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La. 1980); Gonzales, 320 So.2d 163, 165-166.

ISSUE TWO: EMPLOYMENT STATUS
There are numerous elements of the relationship between employer and employee or independent contractor which determine the right of control. No one element is determinative; therefore, each case must be decided according to its peculiar facts. See, Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, 485 (1955). In Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 390-391 (1972), the Louisiana Supreme Court set forth characteristics of the independent contractor relationship. Justice Sanders, speaking for the court, stated:
"It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955)."
Upon our independent review of the record, this court finds Cure is an employee of Barriere Construction Company rather than an independent contractor. The following facts are pertinent to this determination of employee status and illustrate Barriere's "right" of control.
Barriere Construction Company is in the business of laying asphalt and uses trucks to haul asphalt and sand used to make this asphalt. To satisfy its hauling needs for sand and delivery of asphalt, Barriere owns *1157 its own trucks which are driven by its employees and also engages individuals who own their own trucks and pay for their own fuel, repairs, tires, and maintenance. At the time of the accident, Barriere had an arrangement with Walter Ansardi, whereby Ansardi was responsible for calling truckers of his choice to work for Barriere. Barriere did not withhold taxes or pay workmen's compensation for these truckers; however, Barriere required these truckers to have liability insurance at a certain amount and an initial inspection of their trucks.
Barriere's procedure in relation to these truckers consisted of one of its plant foremen calling Ansardi late each afternoon. Ansardi would receive instructions from Barriere which included what materials were to hauled, arrangements concerning locations for pick up and delivery of these materials, times to begin hauling, and how many trucks Barriere needed. That evening Ansardi would call the truckers needed to meet Barriere's request. He regularly called Cure and several other reliable truckers. Cure considered his occupation as having a "for hire" truck. He had been working as a "hired truck" for Barriere Construction Company for approximately six years of which he hauled for Barriere 99 percent of the time. For over three years prior to the accident, Cure hauled solely for Barriere Construction Company.
With respect to compensation, Barriere decided the mode (by the load or by the hour) and amount of payment for Cure's services. Occasionally, as a group, the truckers called by Ansardi would "ask" Barriere for wage or price increases. Cure testified he kept no records of his hours but relied totally upon Barriere's determination of his wages. Moreover, sometimes he learned after a haul, that he was to be paid by the load or by the hour.
The truckers called by Ansardi reported to sights designated by Barriere. Cure testified he never hauled on his own initiative, but instead depended upon receiving a call from Ansardi. If Ansardi did not call him, he did not work. Generally, once at the Barriere plant, Barriere's foreman gave Cure instructions concerning the unloading of the sand or asphalt, where to go for the next load, and when to knock off. During the day, his hauling activities were from time to time changed by Barriere depending on the changing needs of Barriere and the weather. Moreover, Cure never independently bought sand and sold it to Barriere. Importantly, he testified that while hauling for Barriere, he did whatever Barriere's foremen directed him to do.
Ansardi testified Barriere gave him authority to hire and fire truckers at his discretion. Ansardi was told by Barriere if a driver does not show up on time or does not work correctly, "get rid of him."
We find the above factors taken as a whole indicate Barriere retained a right of control over Cure and exercised this control as exemplified by retaining the right to fire him at will, controlling the mode and amount of payment it owed Cure, changing Cure's hauling activities depending on its changing needs, and being Cure's sole source of employment and income for three years prior to the accident. Moreover, Cure's services in hauling of asphalt and sand for Barriere were an integral part of Barriere's business operation. Finally, Cure relied totally on Barriere for instructions concerning loading and delivery of sand or asphalt, locations, and when to discontinue working.
Finding Cure an employee of Barriere Construction, this court next considers whether at the time of the accident Cure was acting within the course and scope of his employment.
In Louisiana an employer is liable for a tort committed by his employee if, at the time, the employee is acting within the course and scope of his employment. La. C.C. art. 2320; LeBrane v. Lewis, 292 So.2d 216, 217 (La.1974). According to LeBrane v. Lewis, the question is whether the employee's tortious conduct,
"was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly *1158 attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." LeBrane, 292 So.2d 216, 218.
In the present case, the accident occurred at approximately 6:30 a.m. as Cure approached the sand pit assigned for his first loading of sand. Testimony at trial indicates Cure was to begin loading of the sand at 7 a.m., and at this time his hourly wage would begin.
Relying on the general rule that an employee who is on his way to work or who is going home from work is not in the course and scope of his employment, Barriere Construction Company contends it is not vicariously responsible for Cure's tort committed prior to his arrival at the sand pit. The record reflects Barriere had two procedures for its daily instruction of truckers such as Cure. At times Barriere required Cure to report to its plant site for instructions. More frequently, including the morning of the accident, Barriere required Cure to proceed directly to a predesignated location. Cure was, therefore, on his first assignment, not on his "way to work." His activity of driving to this first assignment is incidental to the performance of his employment functions. See, Security Insurance Company of Hartford v. St. Paul Fire and Marine Insurance Company, 375 So.2d 687, 690 (La.App. 4th Cir.1979); Cain v. Doe, 378 So.2d 549, 550 (La.App. 4th Cir.1979). Therefore, this court finds Cure was within the course and scope of his employment.

ISSUE THREE: LIABILITY OF STATE OF LOUISIANA
We now address plaintiff's assertion it was error for the court in a bench trial on the issue of liability of the State of Louisiana through its Department of Transportation and Development, to dismiss the State on a Motion for a Directed Verdict. Under the provisions of La.C.C.P. art. 1810 B, in considering a Motion for a Directed Verdict tried by the court without a jury, the preponderance of the evidence standard applies. Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011, 1013 (La.App. 4th Cir.1980).
Plaintiffs, therefore, would have to prove by a preponderance of the evidence that the Department failed to maintain its highways in a reasonably safe condition for a motorist exercising ordinary care and reasonable prudence. Although it is not an insurer of the safety of motorists using its highways, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Plaintiffs must show that defendant negligently allowed a known dangerous condition to exist, which condition caused the accident in question. Maxwell v. State, Dept. of Transp., Etc., 391 So.2d 1230, 1232 (La.App. 1st Cir.1980).
Plaintiffs established at trial that over the years many accidents had occurred in the vicinity of the present one; however, no relationship was established between the cause of those accidents and the present one. State Trooper Allen Aubert, who investigated the instant accident, stated a major problem with that part of the highway causing past accidents was the steep slope of the shoulders and the lack of barriers to prevent cars from going into the spillway. The facts of the instant case offer no connection between the shoulders of the highway and the Cure truck crossing the center lane. Although both Officer Aubert and plaintiffs' expert witness opined that a barrier between the north and south bound lanes would have prevented the accident in question, plaintiff failed to establish the absence of such a barrier was a breach of defendant's duty. Defendant must not knowingly allow a dangerous condition to exist. However, the prior accidents did not involve vehicles crossing the center lane so the State had no knowledge of this specific danger. The trial judge properly stated at trial, when granting the directed verdict, there was no evidence before the court to show there was a dangerous condition existing on the morning of the accident which caused the fatal collision. Therefore, the trial court *1159 was correct in granting the directed verdict as plaintiffs failed to prove by a preponderance of the evidence their case against the State.

ISSUE FOUR: DISMISSAL OF MADERE
We now address the issue of whether the trial judge erred in failing to grant Cure's and Aetna's motion for a new trial or reduce plaintiffs' award subsequent to the dismissal of defendants, Antoine J. Madere and Travelers Insurance Company, from the litigation. The record reflects that subsequent to jury voir dire and during the time stipulations were being heard, counsel for Madere and Travelers revealed plaintiffs had stipulated his clients would be dismissed without prejudice, all plaintiffs reserving their rights against all other parties.
A remaining tort-feasor is entitled to a reduction of an award when co-defendants are released if those parties are proven to be joint tort-feasors. Therefore, the remaining defendant is required to establish the negligence of the released defendant at trial. Raley v. Carter, 412 So.2d 1045 (La.1982).
In the case of Danks v. Maher, 177 So.2d 412 (La.App. 4th Cir.1965), plaintiff settled with two of four co-defendants just prior to completion of the trial. The court reduced the plaintiff's award by the share of those defendants with whom plaintiff had settled. The reason was the remaining defendants had been unfairly deprived of an opportunity to establish the joint negligence of the parties released.
In the case of Raley a factual situation similar to the one before this court is presented. On the morning of the trial in Raley three of four co-defendants were dismissed. No evidence was adduced at trial by either the plaintiff or remaining defendants tending to prove or negate liability on the part of the released co-defendants. However, the court declined to reduce the award reasoning that because defendants were aware plaintiff had settled just prior to the trial's beginning, they were free to request a continuance or offer evidence of the co-defendants' negligence in order to meet their unexpectedly altered burden of proof. The court expressed a desire to encourage pretrial settlement negotiations. Therefore, it would strictly limit the result reached in Danks.
In the instant case, although trial had begun as voir dire had been completed, plaintiff had not yet begun to present its case in chief. Nevertheless, defendants failed to move for a continuance, ask for a recess, or make any objection until the end of trial. Although the trial lasted for over a week, defendants failed to offer any evidence or elicit any testimony tending to establish Madere's negligence.
Although trial had just begun when the dismissal was announced, there was ample time for defendants to attempt to meet their burden of proof. Rather, they waited until after trial to object at which time it was evident that only the negligence of defendant Cure, rather than the joint negligence of defendant Madere, was the proximate cause of the accident. Therefore, the trial court was correct in refusing to grant a new trial or reduce the award.

ISSUE FIVE: NET VS. GROSS INCOME
The next issue addressed is the assertion of defendants, Cure and Aetna, the trial court improperly instructed the jury that it had the option of using either gross or net income or any figure in between in its damage determination. They also allege the trial court improperly rejected a requested jury charge which stated:
"Any consideration of damages for loss of wages, past or future, should be based on net income after taxes, since the plaintiff's or decedent's gross earnings before taxes are never truly available to him."
Cure and Aetna contend this quote represents the current status of the law as stated in Edwards v. Sims, 294 So.2d 611 (La. App. 4th Cir.1974). However, in the more recent case of Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855, 862 *1160 (La.App. 4th Cir.1975) the same court states:
"In awarding loss of future wages, our courts have the option of using the gross income, the net income, or any figure in between that was reported by the injured on his last tax return, representing his latest statement of his wages."
The court cites its earlier language in Edwards, supra but continues:
"Because tax liability varies with the individual and is altered with changing circumstances, in some cases it is more appropriate to project future lost earnings on a figure near the gross income... While damages he is awarded are not taxable, the income derived from their investment is."
Therefore, in accordance with Morgan the trial court's instruction was not erroneous.

ISSUE SIX: AWARD TO SHARON KENNEDY
The last issue we address is appellant Sharon Marie Kennedy's contention the award for the loss of her earnings was an abuse of discretion, permitting this court to increase the amount. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Stating the testimony was uncontradicted, appellant asserts the jury was compelled to return an award within the perimeters set forth by her economic expert citing Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). However, the trier of fact is not bound by the opinions of experts. Projections of earnings by economic experts should be given such value as the trier of fact deems appropriate. Faulk v. Schlumberger Well Services, 412 So.2d 162, 169 (La.App. 3d Cir.1982).
Kennedy's economic expert, Dr. Duggar, testified on cross-examination that his figures assumed that prior to the accident Ms. Kennedy would have had an estimated work life expectancy of 39 years as an unmarried woman. His projections were based on classifications assigned to women according to their marital status. He also stated the work life expectancy for a married woman would be approximately ten years less which would reduce the total award accordingly. While it is true Ms. Kennedy is unmarried with no current plans for marriage, the jury could have taken into account that even had the accident not occurred she might have been out of the work force for some period in her life due either to having children or other factors.
Also, the expert's figures represented an assumption that Ms. Kennedy would never be able to work again. Counsel for Cure and Aetna questioned Dr. Duggar about his estimated lost wages if Ms. Kennedy were to get a job at minimum wage. The jury's award, in fact, fell within the estimated wage loss assuming Ms. Kennedy was employed at minimum wage.
This court points out that given the current mores and economic conditions it is clear that many women do work all of their lives. Also, the probability of a woman with Ms. Kennedy's impairment obtaining employment, when so many sighted persons are unemployed, is somewhat uncertain at best. However, we cannot say the jury abused its discretion in considering Ms. Kennedy may have left the work force for some substantial period of time or the possibility of her employment even in her present condition. Therefore, the award for Ms. Kennedy's loss of earnings is not clearly wrong.
Upon review of the damages, this court notes an error in the award to the Kennedy family of $50,000 for the pain, suffering, and mental anguish of Jessie Kennedy. Under Louisiana law, survivors are given the right to recover the damages, including pain and suffering, which the victims suffered and would have been entitled to recover from the defendants, if the victims had lived. This is commonly referred to as the survival action inasmuch as it survives the death of the decedent and passes to certain named beneficiaries as an inheritable property right. LCC-Article 2315; Guidry v. Theriot, 377 So.2d 319 (La.1979). However, an award for such *1161 damages is predicated upon a showing that they existed.
The Kennedys did not plead a survival action at the instigation of this suit nor was any evidence presented to support one. Rather, the evidence establishes Jessie Kennedy died instantly or within moments of the impact. Those at the scene immediately after the collision stated he appeared dead, and he was pronounced dead at the scene by the coronor.
"Where there is no indication that the decedent consciously suffered any pre-death pain, an award cannot be made to the survivors for pain and suffering. Addison v. Travelers Insurance Company, La.App., 281 So.2d 805 (1st Cir. 1973)." Blanchard v. Rodrigue, 340 So.2d 1001, 1009 (La.App. 1st Cir.1976).
Therefore, in the interest of justice, we set aside the amount erroneously awarded the Kennedy family as a survival action. Rule I, Section 3, Uniform RulesCourt of Appeal.
For the reasons assigned, we reverse and set aside that part of the trial court's judgment finding in favor of Lela B. Kennedy in the sum of $30,000; Sharon Marie Kennedy in the sum of $5000; Gary Lee Kennedy in the sum of $10,000; and Aubrey C. Kennedy in the sum of $5000 for the pain, suffering, and mental anguish of Jessie Kennedy.
We reverse that part of the trial court judgment which held Martin J. Cure, Jr. was not an employee of Barriere Construction Company and further held Martin J. Cure, Jr. was an independent contractor, and we hold Martin J. Cure, Jr. was an employee of Barriere Construction Company.
We affirm those portions of the trial court judgment in favor of:
1. Donna Renee Poyner and Melinda Lerai Poynor as follows:
a. Pain, suffering and mental anguish of Bernice Poynor:
Donna Renee Poynor $30,000; Melinda L. Poynor $10,000.
b. Loss of earnings of Bernice Poynor:
Donna Renee Poynor $400,000; Melinda L. Poynor $100,000.
c. Loss of love, companionship and services of Bernice Poynor:
Donna Renee Poynor $25,000; Melinda L. Poynor $15,000.
d. Medical and funeral expenses, Bernice Poynor:
Donna Renee Poynor $4650.
e. Property damage:
Donna Renee Poynor $5155.
2. Lela B. Kennedy, Sharon Marie Kennedy, Gary Lee Kennedy, and Aubrey C. Kennedy as follows:
a. Loss of earnings of Jessie Kennedy:
Lela B. Kennedy $250,000; Gary L. Kennedy $75,000.
b. Loss of love, companionship and services of Jessie Kennedy:
Lela B. Kennedy $30,000; Gary L. Kennedy $15,000.
c. Loss of love and companionship of Jessie Kennedy:
Sharon M. Kennedy $5000; Aubrey C. Kennedy $2500.
d. Pain, suffering, mental anguish and permanent disfigurement of Sharon M. Kennedy:
Sharon M. Kennedy $500,000.
e. Loss of earnings by Sharon M. Kennedy:
Sharon M. Kennedy $450,000.
f. Medical expenses, past and future, for Sharon M. Kennedy:
Sharon M. Kennedy $25,000.
3. Kermit King as follows:
a. Pain, suffering, mental anguish:
Kermit King $17,000.
b. Loss of earnings:
Kermit King $4000.
c. Medical expenses:
Kermit King $4000.
d. Property damage:
Kermit King $100.
We amend that portion of the judgment against defendants Martin J. Cure, Jr., Aetna Insurance Company, and Sentry Insurance Company, to include Barriere Construction Company as a defendant.
*1162 Accordingly, we recast the judgment to read as follows:
It is ordered that there be judgment in favor of the plaintiffs, Donna Renee Poynor, Melinda Lerai Poynor, Lela B. Kennedy, Sharon Marie Kennedy, Gary Lee Kennedy, Aubrey C. Kennedy, and Kermit King and against defendants, Martin J. Cure, Jr., Aetna Insurance Company, Sentry Insurance Company only in its capacity as the under insured and/or uninsured motorist insurer of Jessie C. Kennedy, Sharon Kennedy and Bernice D. Poynor, and Barriere Construction Company, in solido, for the full sum of $1,467,405,[4] together with legal interest thereon from day of judicial demand until paid and all trial court costs including an expert fee of $250 per day for each expert who testified. Appellee Barriere Construction Company is cast for all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, SET ASIDE IN PART, AND AMENDED IN PART.
BOUTALL, C.J., and DUFRENSE, J., dissent.
BOUTALL, Chief Judge, and DUFRESNE, Judge, dissenting.
We dissent from that portion of the decree which holds Barriere Construction Company liable for plaintiffs' damages.
The liability of Barriere Construction Company is based upon the negligent actions of Martin J. Cure, Jr. and the operation of Louisiana Civil Code articles 2317 and 2320, which provide for the vicarious liability of employers for damage occasioned by their servants. There is no assertion that Cure was a regular employee of Barriere, but liability is based upon the issue of whether he is considered as a statutory employer. There is very little dispute as to the facts controlling this situation, the problem arising more from the conclusions to be drawn therefrom and the application of the law to those facts and conclusions.
In this case the jury heard the witnesses and considered the evidence and found that Cure was an independent contractor and not an employee of Barriere. We agree with the jury's finding. The majority opinion would reverse that finding and substitute a contrary finding, that Cure was an employee and not an independent contractor. It is pointed out that there was some confusion amongst the jurors as to the applicable law. This is simply demonstrated by the fact that initially the jury brought in a finding that Cure was an independent contractor and at the same time a finding that he was an employee. However the jury was sent out to deliberate again and returned with the finding that Cure was an independent contractor. We consider that the evidence amply supports this finding.
Barriere Construction Company was engaged in a business which involved the hauling of considerable amounts of sand, fill asphalt and other materials. It had a certain amount of its own trucks and employees who handled this portion of the business for them, and in addition it used other trucks and truckers to supplement its own work force. Barriere made an agreement with Walter Ansardi, whereby Ansardi furnished to Barriere such additional trucks and operators as it may require. Ansardi was a trucker and hauler who owned several trucks for hire, operating one himself and employing others to drive his remaining trucks. The usual procedure was that one of Barriere's supervisors would call Ansardi by telephone in the afternoon and would notify Ansardi of a need to have a certain amount of trucks available the next day to do particular amounts or types of hauling. Ansardi would first furnish his own trucks and then select from amongst a group of independent truckers who owned and operated their own trucks such amount as he felt could fulfill the job requirements and order them to report to specified places for specified hauling jobs. One such trucker was Cure. *1163 The employment or selection of any particular truck was made by Ansardi, and it was up to the trucker to decide whether he wished to accept that job or not. Ansardi generally selected those with whom he worked the longest. Cure was at the top of a list of about 50 truckers, some of whom were called only rarely.
Barriere exercised no control over the selection process, except that it required Ansardi to use only truckers whose equipment was safe and efficient and who accomplished their contract loads promptly. Except for these general provisions, Barriere exercised no control of the truckers as employees, did not carry them on the payroll, did not deduct social security taxes or withholding taxes or carry workmen's compensation insurance upon them. Instead each trucker was upon his own to acquire his truck in whatever fashion he could, and pay all of the expenses, maintenance and upkeep on the truck, as well as handle all of his fuel, maintenance, etc. on his own.
Neither can we deduce from the evidence that Barriere controlled the operation of these truckers as it could the work day of its employees. For example, Barriere would ordinarily specify that it needed a certain amount of trucks to haul fill from one location to another within a particular time frame. What the truckers did before or after that period was of no concern to Barriere. Of course Barriere did, within the general contract between the parties and within the ambits of their requirements, insist that the driver pick up his load at a certain time and place and deliver it to another certain place to be placed in a particular fashion, but this is not the exercise of control over an employee, simply requirements of the job that is being undertaken. Cure also considered himself as an independent trucker or a "for hire" trucker. Although he did haul under the agreement with Ansardi and Barriere for a number of years as the predominant part of his business, he recognized that he could refuse to haul whenever he wished and that he could haul for others whenever he wished.
In summary of these facts, we cannot find that Barriere exercised any such control over this truck owner and operator as to make him a statutory employee. Consistent with that, the accident happened while Cure was on his way from home to the site from which he was to begin hauling. Barriere had no control over Cure's method of getting to the sand pit, simply that he get there by a certain time in order to haul the sand to its selected location timely. Cure received no compensation for his hauling until he reported at the job site, whether he was paid by the load or by the hour.
Accordingly, we dissent from that portion of the decree declaring Barriere Construction Company to be liable to plaintiffs, and we would affirm the jury verdict.
NOTES
[1] Since the jury found that Cure was negligent and the proximate cause of the respective plaintiffs' injuries and deaths, U.S.F. & G. was cast in judgment for the limits of this primary policy, $500,000. U.S.F. & G placed $500,000 in the registry of the court and neither appealed this judgment nor answered plaintiffs' and defendant Cure's appeals. The question of U.S.F. & G's primary policy applicability is, therefore, not before us.
[2] The total amount awarded to all plaintiffs was $2,017,405.
[3] Also raised on appeal were the issues of whether the trial court insufficiently instructed the jury as to the "proper" amount of insurance coverage available to defendant Martin Cure after admitting evidence of his inability to respond to damages and whether Martin J. Cure, Jr. was a named insured under Barriere's excess liability policy. Our decision finding Cure an employee of Barriere Construction Company pretermits review of these issues.
[4] This sum does not include the $500,000 placed in the registry of the court by United States Fidelity & Guaranty Company and not subject to this appeal.