527 So.2d 430 (1988)
Bryant BARTLEY, Individually and as Administrator of the Estate of his Deceased Wife Grace Bartley and as Natural Tutrix of Bryant Bartley, Jr., Tanya Maria Bartley, Derrick Jude Bartley and Eric Joseph Bartley
v.
Max PAILET, M.D., Touro Infirmary and St. Paul Fire Insurance Company.
No. 88-CA-0022.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Trevor G. Bryan, Jefferson, Bryan, Gray & Jupiter, New Orleans, for plaintiff/appellant.
*431 William S. Penick, Bryan C. Misshore, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendants/appellees.
Before WARD, WILLIAMS and ARMSTRONG, JJ.
WILLIAMS, Judge.
This is an appeal by plaintiff, Bryant Bartley, from an involuntary dismissal at the close of his presentation of evidence at the trial of his action against defendants Dr. Max Pailet and his insurer St. Paul Insurance Company ["St. Paul"]. Plaintiff sued individually, as administrator of the estate of his late wife, and as tutor for his four children.
Grace Bartley, deceased wife of plaintiff, was thirty-eight years old and the mother of four children at the time of her death in 1983. Dr. Pailet had been her obstetrician/gynecologist since 1969. By January, 1980, Mrs. Bartley told defendant that she was under the care of cardiologist Dr. George Burch (now deceased). Because of her heart problems she considered terminating her last pregnancy, but decided not to do so. In 1983, Mrs. Bartley was scheduled to undergo a vaginal hysterectomy because of uterine fibroids. Twelve days before the surgery was to take place, Dr. Burch performed a thorough workup of Mrs. Bartley and cleared her for surgery. Dr. Pailet never contacted Dr. Burch; Mrs. Bartley personally informed the admitting nurse of the "clearance". Defendant also examined Mrs. Bartley and ran an EKG on her the day before surgery. No problems were revealed by the tests and she had no complaints that would indicate any difficulties. The hysterectomy was performed without any problems on June 20, 1983. The evening following surgery Mrs. Bartley suffered a stroke. The stroke was caused by a blood clot that lodged in the cerebral artery after travelling from the heart where it had formed. She died four days later when the family agreed to withdraw her from life support systems.
Plaintiff instituted a medical malpractice suit against Dr. Pailet, Touro Infirmary, where the operation was performed, and St. Paul. During the bench trial, plaintiff testified and also presented the testimony of the pathologist who performed the autopsy on Mrs. Bartley and Dr. Dwight McKenna, an expert in surgery. Plaintiff also called Dr. Pailet for cross-examination. All defendants moved for involuntary dismissal at the close of plaintiff's case. La. C.Civ.Pr. art. 1672(B). Because there was no evidence indicating any responsibility on the part of Touro Infirmary for the alleged malpractice, plaintiff agreed to Touro's voluntary dismissal. The trial court also dismissed Dr. Pailet finding no causal connection between Mrs. Bartley's death and any malpractice. It is from this ruling that plaintiff now appeals arguing that the trial court erred in dismissing the action.
Article 1672(B) of the Louisiana Code of Civil Procedure[1] provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
See Poynor v. Cure, 443 So.2d 1151 (La. App. 5th Cir.1983). A trial judge must weigh and evaluate the evidence and grant dismissal if the plaintiff has not established proof by a proponderance of evidence. Poynor, supra; Johnson v. Larson, 441 So.2d 5 (La.App. 3d Cir.1983). Whether a motion of dismissal shall be granted in within the discretion of the trial court. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3d Cir.1984); Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3d Cir.1982).
In a malpractice action, plaintiff has the burden of proving that:
*432 * * *
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La.R.S. 9:2794(A).
Furthermore, the statute provides:
(C) In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician's, dentist's or chiropractic physician's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable. La.R.S. 9:2794(C).
At trial, Dr. McKenna testified that Mrs. Bartley should have been examined by a cardiologist and cleared for surgery no more than twenty-four hours prior to the operation. Furthermore, he said that the clearance should have come directly from the cardiologist, not through an oral representation by the patient.
Whether an examination would have revealed the presence of the clot was unclear. Both Dr. McKenna and Dr. Robert Burnette, who performed the autopsy, testified that it was impossible to tell whether the clot had developed before or after the operation. Even if the clot had developed preoperatively, McKenna could not say whether the examining physician would have detected it.
Plaintiff relies on Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986), wherein the Louisiana Supreme Court held:
"It is not necessary to prove that a patient would have survived if proper treatment had been given, but only that there would have been a chance of survival. Destruction of a two percent chance of survival has been held to present a jury question as to causation."
Id. at 720 (citations omitted).
The Hastings court rejected the application of La.R.S. 9:2794, because unlike the present case, the doctrine of res ipsa loquitur (plaintiff had bled to death in the hospital over a two and one-half hour period without any surgical intervention) was applicable. Furthermore, the Hastings action came before the Louisiana Supreme Court as a result of a directed verdict in favor of defendants. The Court remanded for the jury to determine if there was "a reasonable probability that [surgery] would have been life saving in these circumstances." Id. at 722. As three justices pointed out in concurrence, any final adjudication of liability on behalf of all defendants was premature at that time.
Other than in a case involving res ipsa loquitur, a plaintiff must show that it is more probable than not that he suffered injury as a result of defendant's conduct. Coleman v. Touro Infirmary of New Orleans, 506 So.2d 571 (La.App. 4th Cir.1987). Based upon the doctors' testimony at trial, we cannot find that the trial judge's conclusion that plaintiff failed to carry his burden of proof was manifestly erroneous. Mott, supra. The doctors could not say whether the clot existed before surgery or, had it existed whether it would or could have *433 been detected. Therefore, even assuming that defendant's failure to have Mrs. Bartley examined by a cardiologist within twenty four hours of the operation falls below the requisite standard of care, the trial judge could have reasonably found that plaintiff had failed to establish by a preponderance of the evidence that Mrs. Bartley's tragic death was a direct result of his actions (or inaction).
For the foregoing reasons, the decision of the trial court is affirmed; all costs to be borne by plaintiff.
AFFIRMED.
ARMSTRONG, J., concurs with reasons.
ARMSTRONG, Judge, concurring.
Notwithstanding my sympathies in this very tragic case, I am compelled to join in this opinion because, as the majority points out, there is simply no evidence that, had Mrs. Bartley been examined by a cardiologist within twenty-four hours of surgery, the clot which killed her would have been discovered.
NOTES
[1] Formerly La.C.Civ.Pr. art. 1810(B).