568 So.2d 663 (1990)
Adair D. JONES
v.
NEW ORLEANS LEGAL ASSISTANCE CORPORATION and Jim Sacher.
No. 89-CA-1459.
Court of Appeal of Louisiana, Fourth Circuit.
October 4, 1990.
Writ Denied December 14, 1990.
*664 Johnnie A. Jones, Johnnie A. Jones, Jr., Jones & Jones, Baton Rouge, for plaintiff-appellant.
Mark Morau, New Orleans Legal Assistance Corp., and Bruce C. Waltzer, Waltzer & Bagneris, New Orleans, for defendants-appellees.
Before GARRISON, BARRY and BECKER, JJ.
BARRY, Judge.
Adair Jones, an attorney employed by the New Orleans Legal Assistance Corporation [NOLAC] from July, 1981 through January 20, 1984, sued NOLAC and Jim Sacher, NOLAC's Executive Director. Jones alleged that he was wrongfully discharged, wages and pension funds were not paid, and there was "an abuse of right." He claimed mental anguish and asked for penalties and attorney's fees.
In a consent judgment the parties stipulated:
THAT the issues at the trial of this matter are to be limited exclusively to plaintiff's claim for abuse of right, wrongful refusal to pay pension benefits, wrongful refusal to pay wages which is limited to plaintiff's claim for a retroactive salary increase and wrongful conversion, provided that none of the abovementioned claims are dismissed prior to trial.
The defendants' no cause of action exceptions as to the wrongful discharge and wrongful conversion were maintained. Several exceptions as to the abuse of right claim were overruled.
The case was transferred to a commissioner. After Jones presented his case the defendants' motion for dismissal was granted. Jones filed exceptions to the commissioner's recommendations. Jones had refused to provide the transcript and the trial court stated that it was impossible to make a de novo determination. The court concluded that Jones failed to allege sufficient facts to support one of the elements of his abuse of right claimdamage or injury to himselfand that issue was moot. The court approved the commissioner's ruling that Jones failed to prove money was owed and denied Jones' exceptions to the recommendations. Jones' motion for a new trial was denied and he appealed.
This Court noted that the trial court did not make a de novo review of the commissioner's hearing and ex proprio motu vacated the judgment. The matter was remanded for a de novo review including the transcript. Jones v. NOLAC, 535 So.2d 33 (La.App. 4th Cir.1988).
The trial court noted that it reviewed the entire record (including the transcript), the briefs and findings of the commissioner, and concluded that the prior opinion of the *665 judge as to the abuse of right claim and the findings of facts by the commissioner were approved. Jones' suit was dismissed.
Jones specifies five errors:
1) The trial court's reasons for judgment are vague, ambiguous, imprecise and contrary to the law and evidence;
2) The commissioner erred by not requiring the defendants to sign the pre-trial order;
3) The commissioner erred by not permitting evidence relative to the abuse of right claim;
4) The commissioner prepared a biased and partial report;
5) The commissioner erred by granting the defendants' motion for dismissal.

SPECIFICATION # 1 THE JUDGMENT
Jones argues that the trial court's reasons for judgment are too vague and ambiguous to allow him to specify errors on appeal.
The trial court noted that it reviewed the entire record, briefs and findings of the commissioner. The Commissioner issued nine pages of reasons on behalf of the defendants. The court concluded: "Judge Holahan's opinion is in the Court's opinion correct." The trial court stated that it agreed with the original "written reasons regarding the abuse of right claim ... " and "could not have said it better." Those reasons deal primarily with the abuse of right claim and Jones' failure to support the claim.
We find no vagueness and ambiguity in the original or subsequent reasons for judgment.

SPECIFICATION # 2 THE PRE-TRIAL ORDER
Jones states that he prepared the pre-trial order, defense counsel requested an amendment, and a supplemental pre-trial order was submitted. Defendants' motion to strike portions submitted by Jones was granted ex parte. Jones filed a motion to vacate the order to strike and the commissioner ordered that all motions and exceptions be heard later. On the day of trial the matter was not resolved and the pre-trial order had not been signed. The commissioner was ready to proceed because he believed Jones objected to the order. Jones stated that he did not object and the pre-trial order was signed after agreed upon changes were made.
Jones argues that no contradictory hearing was held, but admits that he signed the pre-trial order. He does not allege how his case was adversely affected.
This argument lacks merit.

SPECIFICATION # 4 RECOMMENDATION
In order to clarify the arguments we will first discuss Errors 4 and 5.
Jones argues that the commissioner erred by not preparing an impartial report and allowing the defendants to prepare the recommendation.
Jones contends that the commissioner had the defendants prepare his report and recommendation and it is slanted in their favor. After argument by counsel on the motion to dismiss, the commissioner stated that he was going to grant the motion. He then stated: "I will instruct Mr. Waltzer [defendants' counsel] to prepare the judgment, and I will approve it, and I will wait ten days." The trial court did not state that defense counsel would prepare the reasons for his recommendation.
The original trial court judgment was rendered without a transcript and vacated by this Court. The present judgment was rendered after a review of the record including the transcript.
Defense counsel properly notes that it is routine for the prevailing party to draft a judgment for the court.
Defense counsel's preparation of the judgment was not reversible error.

SPECIFICATION # 5 MOTION TO DISMISS
Jones argues that the defendants' business records confirm the significant facts of this case. He claims that only one witness, Jim Sacher, NOLAC's Executive Director, testified contrary to the documentary evidence as to his retroactive pay raise. Jones says that Sacher testified that he *666 was in possession of Jones' pension at the end of January, 1984 but Jones was not paid until the latter part of March, 1984. He states that NOLAC's records confirm that he did not receive all of the money due him.
La. C.C.P. art. 1672 B provides in pertinent part:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief.
The trial court shall weigh and evaluate all the evidence and grant dismissal if the plaintiff has not established proof by a preponderance of the evidence. Financial Corporation v. Estate of Cooley, 447 So.2d 594 (La.App. 3rd Cir.1984); Johnson v. Larson, 441 So.2d 5 (La.App. 3rd Cir. 1983), writ denied 444 So.2d 124 (La.1984); Murray v. Haspel-Kansas Investments, 395 So.2d 453 (La.App. 4th Cir.1981). The court must take the evidence as a whole and decide whether it shows that a fact or cause sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988).

RETROACTIVE PAY RAISE
In his opening statement Jones' counsel declared that in October, 1982 NOLAC was under a salary freeze for one year as to all pay raises. In 1983 the Board determined that employees who had not received a pay raise in 1982 would get a single step salary increase plus a 4% cost of living increase. Counsel argued that Jones was hired in July, 1981 and promoted to managing attorney on November 3, 1981. In February, 1982 Jones assumed the temporary position of acting director of litigation for several months and received a higher salary. He resigned from that position and returned to the managing attorney salary of $28,010.00. In 1983 Sacher was hired as Executive Director of NOLAC and after the freeze was lifted in October, 1983 Sacher told the employees to contact him to see if they were to get the single step salary increase. Jones contacted Sacher but he did not receive the raise. Sacher testified that near the end of 1983 some pay increases were paid. He stated that prior to that raise Jones' salary was $28,010 and the raise was effective on January 1, 1984. The Board met in October, 1983 and agreed to a 4% cost of living raise for all employees and a retroactive raise for some employees. Sacher testified that Jones was not entitled to the retroactive raise under the Board's decision, but NOLAC's financial situation had improved and he was willing to listen to Jones' request.
Sacher said that he "voluntarily raised his [Jones] salary" in a way Sacher thought was acceptable to Jones. Sacher gave him $1,400.00 as a retroactive raise, but Jones felt it should have been $2,100.00. Sacher stated that the retroactive raise was within his discretion. The NOLAC accountant prepared a list of employees to be given the retroactive raise and Jones' name was not on the list. When Jones told Sacher that he felt he should have been included for the full step increase, Sacher tried to accommodate Jones and agreed to a $1,300.00 to $1,400.00 retroactive increase. On cross examination Jones conceded that the manual indicated that salary increases were within the discretion of the executive director and contingent upon the employee's performance rating.
Sacher testified that he interviewed Jones relative to working for his family's law firm. Jones had signed an acknowledgment with NOLAC that he would not do outside law work, including writing briefs and research, unless he had written approval. Sacher later saw Jones' resume which stated that he had an active association with the Jones law firm. Sacher stated that was a major violation of NOLAC policy.
Sacher testified that Jones' salary when he went to work for NOLAC in 1981 was $24,381.00. Pursuant to a promotion in the fall of 1981 his salary was $28,010.00. In 1982 there was a salary cut which was restored, and in 1982 Jones was promoted *667 to acting director of litigation, but a few months later was demoted back to $28,010.00. Jones was terminated as of January 20, 1984.
Sacher (not the Board) gave Jones an increase because Jones had gotten a raise in 1982 due to a promotion. Sacher stated that Jones' full retroactive pay raise would have been $2,140.00. The bookkeeper, Florence Davis, prepared the list of employees who were eligible and the accountant agreed. The list was sent to the Board three weeks prior to the meeting. Jones attended the meeting but said nothing. Sacher stated that the $1,400.00 was not a retroactive pay raise, but an amount he decided would be equitable. Sacher said he was dissatisfied with Jones' work.
Sacher stated that Jones voluntarily resigned January 28, 1984 and was paid accrued vacation time which Jones acknowledged. Sacher told Jones that his conduct justified immediate termination, but Jones was allowed to resign.
Vincent Bartholemew, NOLAC employee and attorney, testified that he attended the November, 1983 Board meeting and it was his understanding that all employees were to get the retroactive raise. However, he did not get that raise because he had received a step increase before the freeze. He did receive a bonus.
Jones testified that when he received the retroactive check he felt it should have been for $2,154.00. His understanding was that all employees who did not get the step increase in 1982 were to get the 1983 increase. He stated that he did not get the 1982 increase, rather his salary increased due to a temporary promotion.
Jones said Sacher agreed to recognize the anniversary date as November 3rd and would give Jones a retroactive raise, but he would subtract the increased wages he earned as acting director of litigation. Jones claims he was being asked to forfeit wages.
Jones stated the Board had no right to freeze salaries, but conceded that his right to the increase was not a vested right. Jones' counsel argued that it was a vested right and the freeze deferred payment of that right. Jones' counsel argued that the Board's meeting did not specify that Jones would not get a raise.
We conclude that Jones did not prove by a preponderance of the evidence that he was owed the full amount of retroactive pay.

PENSION MONEY, ATTORNEY'S FEES
Jones testified that NOLAC received the pension money for all employees in late January or early February, 1984. Jones picked up his money on March 26, 1984. Jones contends Sacher deliberately held the pension money. Sacher denies any deliberate tardiness and claims that he had to wait for ERISA distribution forms. January 1, 1984 was the termination date from the pension fund and the distribution date was March 9, 1984. Jones could not be reached by phone.
Jones testified that on March 26, 1984 he received $5,090.77 in pension money and Sacher wanted him to acknowledge the amount was correct. Jones signed but reserved his rights. Jones felt that he was entitled to one month's contribution to the fund because he did not receive payment timely. Since his contribution was $21.55 and NOLAC paid four times that amount, Jones calculated he was owed about $84.00. Although Jones admitted that the total amount for which he is suing is relatively small, he argued that he is entitled to attorney's fees.
Johnnie Jones, Sr., Jones' counsel, testified that he worked up a four page summary of attorney's fees based on a $150.00 hourly fee. He did not produce time sheets to support the summary.
We conclude that the claim as to withheld pension funds was not proven by a preponderance of the evidence. Jones is not entitled to attorney's fees.

SPECIFICATION # 3 ABUSE OF RIGHT CLAIM
Jones contends the commissioner erred by refusing any evidence regarding his abuse of right claim. Jones points out *668 that the trial judge did not maintain the no cause of action exception on that claim.
Jones correctly notes that the commissioner stated that he was not going to hear an abuse of right case. Jones' counsel was asking Sacher about a statement he had made in a January 16, 1984 memo as to whether Jones had an option to resign or to be terminated. Defense counsel noted that there was no longer a wrongful discharge claim and if Jones resigned or was fired had no relevance. Jones' counsel argued that he also had an abuse of right charge, but the commissioner did not agree. Jones' counsel introduced Sacher's letter and continued questioning about its contents.
Later Jones' counsel again attempted to discuss what dispute lead to Jones' termination and sought to introduce a January 9, 1984 memo dealing with Jones' outside law practice. The commissioner ruled that the document was irrelevant. Jones' counsel argued that it was relevant to the abuse of right claim. The commissioner informed counsel that he could proffer all documentation and evidence relative to the abuse of right claim.
Toward the end of trial while Jones was on the witness stand, questioning turned to the disciplinary reports which occurred after he filed suit. The commissioner sustained a defense objection because the disciplinary action had no relevance as to whether Jones received the correct pay.
The abuse of right doctrine is not clearly defined in Louisiana due to scant jurisprudence. The Supreme Court has held that the exercise of a right without legitimate and serious interest, even without an alleged or proven intent to harm, constitutes an abuse of right. Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976); Higgins Oil & Fuel Company v. Guaranty Oil Company, 145 La. 233, 82 So. 206 (1919). The doctrine is evolving and its ultimate scope is not clear.
This Circuit has stated:
[F]or one to be held in damages for exercising a right legally conferred upon him there must exist (1) no benefit to the person exercising the legal right, and (2) damage or injury to the person against whom the legal right is asserted.
Lambert v. Maryland Casualty Company, 403 So.2d 739, 757 (La.App. 4th Cir. 1981), aff'd, 418 So.2d 553 (La.1982). See also Cueto-Rua, Abuse of Rights, 35 LA.L. REV. 965 (1975); Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine, § 261 (1977).
The commissioner's reasons discuss the abuse of right claim at length and state that although it is recognized in Louisiana, it is inapplicable to this case where an at-will employee resigned. Although the original trial judge did not maintain the pre-trial no cause of action exception, he had allowed an amendment for Jones to state his claim.
After trial the original judge in his reasons noted that Jones failed to allege that no benefit flowed to the defendants from his discharge. The judge also noted that Jones failed to allege facts to support the other element of the abuse of right claim, i.e., damage or injury to himself. After reviewing the entire record including proffered materials, the second trial judge declared in his reasons that he agreed with the first judge as to the abuse of right claim.
In Morse v. J. Ray McDermott & Co., Inc., 344 So.2d at 1353, the Supreme Court considered the termination of an at-will employee. The company, at its discretion, opted not to waive the nontermination requirement and caused the employee to forfeit his deferred compensation. The court held that the exercise of the right to discharge and the option not to waive the nontermination requirement without legitimate and serious interest constituted an abuse of right. The Morse court held that the otherwise permissible exercise of a legal right to discharge where the employer had the discretion to obviate the harsh forfeiture of deferred compensation was transformed from a legal right to an abuse of that right.
The commissioner correctly distinguished Morse from this case because there is no public policy against NOLAC's actions as in Morse where the plaintiff forfeited substantial deferred compensation.
*669 Jones resigned from his job (or even if one construed that resignation as compelled) and had no employment contract. Jones worked at the will of his employer and could be terminated with or without reason. Whether he was terminated because he had disciplinary problems, because he maintained a law practice, or because he filed suit, it does not matter as to his abuse of right claim. He did not prove that NOLAC, without any benefit to itself, fired him or forced him to resign merely to cause harm.
After a review of the pleadings, commissioner's report, and the trial court judgment, we find no error in the commissioner's decision not to hear detailed evidence on this claim. The petition and supplemental petitions did not state a cause of action as to an abuse of right. In reality, the commissioner noticed on his own motion a no cause of action exception.
We have reviewed the record including proffered documentation. We do not find proof of an abuse of right claim. This assignment lacks merit.
The judgment is affirmed.
AFFIRMED.